Jeremiah J. Galus
AZ Bar No. 030469
Ryan J. Tucker*
AZ Bar No. 034382
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jgalus@adflegal.org
rtucker@adflegal.org

*Application for admission pending
**Additional counsel on signature block

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ARIZONA CHRISTIAN UNIVERSITY, on behalf of itself and its students, | |
| Plaintiff, | Case No. |
| v. | |
| WASHINGTON ELEMENTARY SCHOOL DISTRICT NO. 6; and NIKKIE GOMEZ-WHALEY; JENNI ABBOTT-BAYARDI; KYLE CLAYTON; LINDSEY PETERSON; and TAMILLIA VALENZUELA, all in their official and individual capacities, | **VERIFIED COMPLAINT** |
| Defendants. | |

**INTRODUCTION**

1     1.     This civil rights action seeks to protect a Christian university and

2  its students' fundamental rights to religious exercise and speech and to be

3  free from unlawful governmental discrimination simply because of their

4  religious status and beliefs.

5

6     2.     The U.S. Supreme Court has "made clear that the government, if

7  it is to respect the Constitution's guarantee of free exercise, cannot impose

8  regulations that are hostile to the religious beliefs of affected citizens and

9  cannot act in a manner that passes judgment upon or presupposes the

10  illegitimacy of religious beliefs and practices." *Masterpiece Cakeshop, Ltd. v.*

11  *Colo. C.R. Comm'n*, 138 S. Ct. 1719, 1731 (2018).

12     3.     The Supreme Court has also "repeatedly held" that the

13  government "violates the Free Exercise Clause when it excludes religious

14  observers from otherwise available public benefits." *Carson v. Makin*, 142 S.

15  Ct. 1987, 1996 (2022). Such religious discrimination is "odious to our

16  constitution." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S.Ct.

17  2012, 2025 (2017).

18     4.     But that is precisely what Washington Elementary School

19  District did to Arizona Christian University and the Christian students who

20  attend there.

21     5.     Washington Elementary School District and each of its board

22  members failed in every respect "to remember their own high duty to the

23  Constitution and to the rights it secures," *Masterpiece Cakeshop*, 138 S. Ct. at

24  1731, when they unanimously voted two weeks ago to terminate an ongoing

25

agreement—and to permanently cut ties—with Arizona Christian and its education students, solely *because of* their religious status and beliefs.

6.      Arizona Christian is a private, non-profit, Christian university located in Glendale, Arizona, whose religious beliefs guide and permeate everything it does, including its education of students, which it does through a biblical worldview.

7.      For the last eleven years, Arizona Christian and Washington Elementary School District, the largest elementary school district in Arizona, had a mutually beneficial partnership where students in Arizona Christian's Elementary Education degree programs would student teach and shadow teachers in the School District.

8.      Arizona Christian students obtained necessary real-world experience in order to graduate, while the School District benefited by having additional (and free) teaching help. In fact, the School District has hired several Arizona Christian graduates who previously student taught in one of its schools.

9.      Despite there being zero complaints about an Arizona Christian student teacher or alumnus, the School District decided to terminate its relationship with Arizona Christian and its students solely because of their religious status and beliefs on biblical marriage and sexuality.

10.      What is more, not only did the School District end its agreement with Arizona Christian and its students at the February 23, 2023, board meeting, it disparaged their religious beliefs, questioning how one could "be

committed to Jesus Christ" and yet respect LGBTQ students and board members.

11.    One board member even stated that the mere presence of Arizona Christian student teachers would make some students—and herself—feel "unsafe." Another stated that she was "embarrassed" that she allowed the School District's partnership with Arizona Christian to continue for so long.

12.    The School District's decision to revoke its relationship and to cease all future agreements with Arizona Christian and the university's students solely because of their religious status and beliefs violated—and continues to violate—their constitutional rights.

13.    In fact, Arizona Christian students wanted to student teach at the School District next school year but must now look elsewhere due to the School District's action.

14.    The School District's practice, policy, and procedure of discriminating against Arizona Christian and its students denying them an opportunity to participate in the student teacher program like other colleges and universities continues to irreparably harm Arizona Christian and its students each and every day they have to decide between their religious beliefs and partnering with the School District.

15.    Arizona Christian and its students need declaratory and injunctive relief to prevent the ongoing and prospective constitutional violation, and damages to remedy the past constitutional violation.

1

## JURISDICTION AND VENUE

2      16.     This civil rights action raises federal questions under the United

3 States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983, and

4 state law protections under Arizona's Free Exercise of Religion Act ("FERA"),

5 Ariz. Rev. Stat. Ann. §§ 41-1493–41-1493.04.

6      17.     This Court has original jurisdiction over the federal claims under

7 28 U.S.C. §§ 1331 and 1343.

8      18.     This Court has supplemental jurisdiction over the FERA claim

9 under 28 U.S.C. § 1367.

10      19.     This Court can grant the requested declaratory and injunctive

11 relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 57 and 65

12 for the federal claims, and pursuant to Ariz. Rev. Stat. Ann. § 41-1493.01(D)

13 for the FERA claim.

14      20.     This Court can award the requested damages pursuant to 28

15 U.S.C. § 1343 and Ariz. Rev. Stat. Ann. § 41-1493.01(D).

16      21.     This Court can award costs and attorney's fees under 42 U.S.C. §

17 1988(b) and Ariz. Rev. Stat. Ann. § 41-1493.01(D).

18      22.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and

19 (b)(2).

20

## PLAINTIFF

21      23.     Plaintiff Arizona Christian University ("Arizona Christian") is a

22 private, non-profit, Christian University located in Glendale, Arizona.

23

24

25

24.     Arizona Christian is a domestic nonprofit corporation organized under the laws of the State of Arizona with its principal place of business at 1 West Firestorm Way, Glendale, Arizona.

25.     Arizona Christian asserts its own rights and the rights of its students.

## DEFENDANTS

26.     Defendant Washington Elementary School District No. 6 is a school district that includes 32 schools in Phoenix and Glendale, Arizona. The School District is a local governmental entity under Arizona law. It is controlled by a Governing Board (the "Board"), which may be sued "in the district name." Ariz. Rev. Stat. Ann. § 15-326.

27.     Defendants Nikkie Gomez-Whaley, Jenni Abbott-Bayardi, Kyle Clayton, Lindsey Peterson, and Tamillia Valenzuela are citizens of Arizona and members of the Board. They are sued officially and individually.

28.     Defendants are collectively referred to as "the School District" unless the context notes otherwise.

## FACTUAL BACKGROUND

**Arizona Christian's History**

29.     Arizona Christian was founded in 1960 under the name Southwestern Conservative Baptist Bible College.

30.     In 2011, the school changed its name to Arizona Christian University.

31.     Today, Arizona Christian is a private, liberal arts, Christian university located in Glendale, Arizona that offers a wide variety of majors

and areas of study to prepare students for successful careers, while remaining committed to Arizona Christian's vision of transforming culture with biblical truth.

**Arizona Christian's Religious Status, Beliefs, and Mission**

32.     Arizona Christian holds sincere religious beliefs that drive and form the foundation for everything it does.

33.     Arizona Christian's sincerely held religious beliefs are rooted in the Holy Bible, which Arizona Christian believes is verbally inspired by God and therefore inerrant in its original writings and the only authority on all issues of faith, life, and practice.

34.     Arizona Christian sincerely believes it must instruct students through a biblical worldview, teaching them to love and serve God above all else and to spread His Gospel and teachings throughout the world.

35.     Arizona Christian also sincerely believes it must treat every person with respect, compassion, and the love of Christ, regardless of the other's beliefs, identity, or status.

36.     And Arizona Christian believes it must, and does, respect the wishes and policies of all local school districts it cooperates with, so Arizona Christian instructs all of its students and staff to respect and abide by the policies of the school districts it cooperates with—including the School District.

37.     Arizona Christian's mission is to "provide[] a biblically-integrated, liberal arts education equipping graduates to serve the Lord Jesus Christ in all aspects of life, as leaders of influence and excellence."

38.    Arizona Christian achieves its mission through integration of biblical teaching and values in all of the school's programs.

39.    Arizona Christian students are taught through a biblically-integrated, general education curriculum. Spiritual development is further integrated within the University experience where all four-year campus students receive a minor in Biblical Studies, attend chapel twice a week, and complete service projects each semester.

40.    Arizona Christian requires all students, faculty, and staff to sign a Statement of Faith.

41.    While the Statement of Faith for faculty and staff is more comprehensive than that required of students, both versions express Arizona Christian's sincerely held beliefs about biblical marriage and sexuality, including the beliefs that God created man and woman in His image and likeness, that God wonderfully and immutably creates each person as male or female, and that God intends sexual intimacy to occur only between a man and woman who are married to each other.

**Arizona Christian's Student Teaching Program**

42.    Arizona Christian offers Elementary Education degree programs to its students.

43.    To complete and graduate in those programs, Arizona Christian students must complete practicum and student teaching requirements.[1]

---

[1] https://www.arizonachristian.edu/elementary-education-bs/

44.     Student teaching is also required for a person with no full-time teaching experience to receive a certificate in elementary education in Arizona.[2]

45.     Arizona Christian's practicum requirement requires students to observe and shadow teachers in elementary schools.

46.     Arizona Christian's student teaching requirement requires each student to teach for a minimum of 405 hours "in an approved traditional public school or Christian school in metropolitan Phoenix." Ex. 1 at 4, Arizona Christian Student Teaching Handbook.

47.     The Arizona Christian Student Teaching Handbook provides that student teachers can engage in student teaching "only when the mentor teacher and [Arizona Christian] supervisor agree that the student is ready to enter the teaching profession." Ex. 1 at 4.

48.     The handbook also provides that Arizona Christian student teachers must "[a]bide by the rules and policies of the assigned school," "[m]aintain a professional attitude with students, families, staff, and administration," and "[b]e friendly, cooperative, positive, and non-argumentative with all school personnel, parents and students." Ex. 1 at 6.

49.     Because Arizona Christian believes it must treat others with respect and kindness and is instructed to abide by all policies of local school districts it cooperates with, Arizona Christian instructs its students and staff not to push their religious beliefs on others while participating in student teacher and practicum arrangements, and to otherwise abide by all policies.

_____

[2] https://www.azed.gov/node/27082

**The School District Enjoyed a Positive, Eleven-Year Relationship with Arizona Christian**

50.     Before February 2023, Arizona Christian had an agreement with the School District for eleven years through which Arizona Christian students were placed at schools in the School District to fulfill the students' practicum and student teaching requirements.

51.     The most recent written agreement between Arizona Christian and the School District was the "Student Teacher Placement Agreement" that Arizona Christian entered into with the School District on February 23, 2018 (the "Agreement"). Ex. 2, Arizona Christian Student Teacher Placement Agreement – WESD.

52.     The purpose of the Agreement was to "to enable an educational experience for student teachers at [Washington Elementary schools] that may qualify for University academic credit as determined by [Arizona Christian]." Ex. 2 ⁋ 2.1.

53.     The Agreement provides that "[e]ach student teacher is expected to perform with high standards at all times and comply with all written policies and regulations of the appropriate department of the [school at which the student teacher is placed]." Ex. 2 ⁋ 2.4.

54.     The Agreement further provides that "[e]ither the [school at which the student teacher is placed] or [Arizona Christian] may require withdrawal or dismissal from participation at the [school] of any student teacher whose performance record or conduct does not justify continuance." Ex. 2 ⁋ 2.5.

55.     The Agreement had a term of one year, commencing on February 23, 2018. And the Agreement could be "renewed on a year-to-year basis by written agreement of the parties not to exceed a period of five years." Ex. 2 ¶ 1.

56.     Every year since entering into the Agreement, the School District has sent Arizona Christian a "Contract Renewal Response Form," through which the School District asks Arizona Christian if it desires to continue to "do business" with the School District under the Agreement.

57.     Before February 2023, Arizona Christian and the School District renewed the contract every year.

58.     Recently, the School District sent Arizona Christian a "Contract Renewal Response Form" for the 2023-2024 year. Ex. 3, Contract Renewal Response Form.

59.     Arizona Christian completed that 2023-2024 form by stating that Arizona Christian "desire[d] to continue to do business with [the School District] under [the Agreement]." Arizona Christian thus "confirm[ed it was] renewing the attached agreement with the renewal term of 2/23/23-2/23/24." Ex. 3.

60.     Over the past eleven years, dozens of Arizona Christian students have served in the School District to complete Arizona Christian's practicum and student teaching requirements. Wash. Elementary Sch. Dist., *Student Recognition & Regular Meeting- Feb. 23, 2023, 6:30 p.m.*, YouTube (Feb. 23,

2023), https://www.youtube.com/watch?v=oUaLqZblEFo (Feb. 23rd Meeting Video).[3]

61.     According to the School District, approximately twenty-five of those students have served as student teachers. *Id.* at 1:21:17–1:21:34.

62.     At least seventeen Arizona Christian students have been hired as teachers by the School District.

63.     And before the February 23, 2023, Board meeting, some Arizona Christian students who completed their practicum requirements at schools in the School District had planned to return to those schools as student teachers in the upcoming school year (school year 2023-24).

64.     The School District has never cited any wrongdoing by Arizona Christian students serving the district or complained about the actions, behavior, or statements of such students.

65.     Over the last eleven years, there were zero complaints or evidence of any Arizona Christian student teacher, practicum student, or Arizona Christian alumni improperly proselytizing or teaching Arizona Christian's religious beliefs to any School District students.

**The School District's Policies**

66.     The School District's Board maintains the following policies:

- The Board is committed to a policy of nondiscrimination in relation to race, color, religion, sex, sexual orientation, gender identity or expression, age, national origin, and disability. This policy will prevail in all matters concerning staff members, students, the public, educational programs

---

[3] Also available at https://vimeo.com/805315709/74c7c28dff

and services, and individuals with whom the Board does business.[4]

- Discrimination against an otherwise qualified individual with a disability or any individual by reason of race, color, religion, sex, sexual orientation, gender identity, age, or national origin or other legally protected status is prohibited. Efforts will be made in recruitment and employment to ensure equal opportunity in employment for all qualified persons. . . . . Equal opportunity extends to all aspects of the employment relationship, including hiring, transfers, promotions, training, terminations, working conditions, compensation, benefits, and other terms and conditions of employment.[5]

- A teacher shall not use sectarian or denominational books or teach any sectarian doctrines or conduct religious exercises.[6]

- The right of a student to participate fully in classroom instruction shall not be abridged or impaired because of race, color, religion, sex, sexual orientation, gender identity, age, national origin, and disability, or any other reason not related to the student's individual capabilities.[7]

Ex. 4, Wash. Elementary Sch. Dist. Governing Bd. Pol'y Manual & Administrative Reguls.

67.    Consistent with the Agreement and Arizona Christian's Student Teaching Handbook, Arizona Christian students understand that they must adhere to the School District's policies when student-teaching or fulfilling

---

[4] AC Nondiscrimination/Equal Opportunity Policy, https://policy.azsba.org/asba/browse/washington/washington/AC

[5] GBA Equal Employment Opportunity Policy, https://policy.azsba.org/asba/browse/washington/washington/GBA

[6] GCMF © Professional Staff Duties and Responsibilities (Duties of Teachers; Failure to Comply is Unprofessional Conduct; Penalty), https://policy.azsba.org/asba/browse/washington/washington/GCMF

[7] Regulations JB Equal Educational Opportunities, https://policy.azsba.org/asba/browse/washington/washington/JB

practicum requirements in the School District's schools, Ex. 1 at 6, and all have done so.

68.     Arizona Christian students who student teach at schools within the School District understand that they cannot use their positions as teachers to force students to engage in conversations about the teachers' beliefs, Feb. 23rd Meeting Video at 1:18:09–1:18:46; *see also* Ex. 1 at 6, and none have done so.

**The School District Cuts Ties with Arizona Christian because of Arizona Christian's Religious Status and Beliefs**

69.     On February 23, 2023, the Board decided not to renew the School District's Agreement with Arizona Christian because the Board disagreed with Arizona Christian's religious beliefs.

70.     Specifically, at the February 23, 2023, Board meeting, the Board addressed whether to renew its Student Teacher Placement Agreement with Arizona Christian.

71.     When discussing why the Board should not renew the Agreement, the Board members criticized Arizona Christian and its students' religious beliefs and exercise.

72.     Defendant Valenzuela opened by questioning the School District's cooperation with Arizona Christian, because of Arizona Christian's religious beliefs: "I was really disheartened when I saw this renewal. . . . I have taken the time to take a look at . . . Arizona Christian University. . . . I had some . . . . concerns regarding . . . this particular institution." Feb. 23rd Meeting Video at 1:08:32–1:09:11.

1

2

73.     Defendant Valenzuela then questioned whether Arizona Christian's religious beliefs would permit it to care for every student:

> [O]ur vision in Washington Elementary School District is committed to achieving excellence for every child, every day, every opportunity. Every child. When I go to Arizona Christian University's website, and I'm taking this directly from their website, "above all else be committed to Jesus Christ accomplishing His will in advancing His kingdom on Earth as in heaven." Part of *their* values, is "influence, engage and transform the culture with Truth by promoting the biblically informed values that are foundational to Western civilization, including the centrality of family, traditional sexual morality, and lifelong marriage between one *man* and one *woman*."

*Id*. at 1:09:59–1:11:04.

74.     Next, Defendant Valenzuela implied Arizona Christian and its students could not treat Board members with respect:

> I want to know how bringing people from an institution that is ingrained in their values . . . will . . . impact three of your board members who are a part of the LGBTQ community. We have added our pronouns at the dais as a solidarity - let our LGBT community know, that we stand, in making sure that they feel protected. Are we only performing performative solidarity, or are we going to dig deep, and actually look at the partnerships that we're doing?

*Id*. at 1:11:04–1:11:59.

75.     Defendant Valenzuela continued: "Because if we're bringing people in whose mission [is to] 'above all else . . . influence people to be biblically minded,' how does that hold space for people of other faiths[,] our members of the LGBT community[, or] people who think differently and do not have the same beliefs?" *Id*. at 1:11:59–1:12:45.

76.     Defendant Valenzuela then concluded, explaining that Arizona

Christian's religious beliefs would make people feel unsafe:

> At some point we need to get real with ourselves and take a look
> at who we're making legal contracts with and the message that
> that is sending to our community. ***Because that makes me feel
> like I could not be safe in this in this school district****.* That
> makes other queer kids, who are already facing attack from our
> lawmakers that they could not be safe in this community. So I
> really want us to think hard about who we're partnering with
> deep dive and I want to ask the district, "***is this school value
> aligned with what we're trying to do and making sure that
> all of our students feel safe?"***

*Id*. at 1:12:46–1:13:34 (emphasis added).

77.     Defendant Clayton echoed Defendant Valenzuela's "concerns"

and stated:

> [W]hen I went and looked into not only [Arizona Christian's] core
> values but then the statement of faith that they ask their
> students to sign and live by, what gave me pause was it's not just
> teaching but it's teaching as they say um, with a Biblical lens,
> with a proselytizing is embedded into how they teach, and um,
> you know, I just don't believe that that belongs in schools and I
> would never want uh you know my son to talk about his two dads
> and be shamed by a teacher who believed a certain way and is at
> a school that demands that they uh, you know uh, teach through
> God's . . . their biblical lens.

*Id*. at 1:13:57–1:15:05.

78.     At the end of the discussion, Defendant Gomez-Whaley, Board

President, explained that "for me my pause is . . . this particular institution's

strong anti-LGBTQ stance and their strong belief that you believe this to

your core and you take it out into the world." *Id*. at 1:25:31–1:25:44.

16

79.     Defendant Gomez-Whaley was "embarrassed" that she allowed the School District's relationship with Arizona Christian to continue on her watch. *Id.* at 1:26:15–1:26:26.

80.     Defendant Gomez-Whaley concluded:

> I do believe that we owe it to um especially all of our students when we're working in equity but especially our LGBTQ students and staff who are under fire who are not protected um and who we have already pledged to support we cannot continue to align ourselves with organizations that starkly contrast our values . . . and say that we legitimately care about diversity equity and inclusion and that we legitimately care about all of our families. We cannot justify. The ends does not justify the means, in my opinion, . . . so um I don't know if there's any further questions or comments from the administration if not I am willing to take a motion.

*Id.* at 1:26:49–1:27:36.

81.     Defendant Valenzuela then made a motion to vote "no" on renewing the School District's Agreement with Arizona Christian.

82.     Defendant Clayton seconded the motion and all five Board members voted in favor of the motion.

83.     Defendant Gomez-Whaley then found that the motion carried.

84.     Accordingly, the School District terminated its eleven-year relationship with Arizona Christian and its students strictly because of their religious status and beliefs—namely their beliefs on biblical marriage and sexuality—despite having zero evidence of any incident by an Arizona Christian student that violated *any* School District policy.

17

85.     Defendant Valenzuela then went on Facebook that night to announce how excited she was that the School District's relationship with Arizona Christian had been terminated:



86.     Defendants Gomez-Whaley's, Abbott-Bayardi's, Clayton's, Peterson's, and Valenzuela's (in their individual capacities) comments and actions in expelling Arizona Christian and its students because of their religious status and beliefs were made with malicious intent, were oppressive, and/or were made in callous disregard to their federally protected rights.

87.     And reasonable school board officials in Defendants Gomez-Whaley's, Abbott-Bayardi's, Clayton's, Peterson's, and Valenzuela's shoes would have known that their conduct violated the constitutional rights of

Arizona Christian and its students because their constitutional rights were clearly established at the time of the violation.

**The School District's Termination of the Agreement Has Irreparably Harmed—and Continues to Irreparably Harm—Arizona Christian and its Students**

88.   The School District has made clear that it will not work with Arizona Christian and its students if they continue to adhere to their Christian religious beliefs on marriage and sexuality.

89.   But Arizona Christian exercises its religion and advances its mission by educating its students through a biblical worldview.

90.   The School District took action against Arizona Christian and its students strictly because of their religious status, beliefs, and messages.

91.   The School District has thus penalized Arizona Christian and its students by preventing them from participating in the School District's student teacher program because they exercise their constitutional rights.

92.   Upon information and belief, the School District continues to work with other universities and colleges (and their students) that do not hold the same religious beliefs on marriage and sexuality as Arizona Christian and its students.

93.   Accordingly, the School District has adopted a practice, policy, or procedure to not cooperate with colleges and universities (and their students) that hold traditional Christian beliefs on marriage and sexuality, such as Arizona Christian and its students.

94.   This practice, policy, or procedure—whether written or unwritten—animates the constitutional violations at issue here.

19

95. Arizona Christian has students in its Elementary Education Degree Programs who would have sought to complete their student teaching or practicum requirements at schools within the School District but now Arizona Christian and those students must look elsewhere for student teaching and practicum placements.

96. Arizona Christian officials must also expend valuable time and resources identifying and securing new student teaching and practicum placements as a result of Defendants' actions.

97. As stated above, certain Arizona Christian students who fulfilled practicum requirements at schools within the School District had planned to return to those schools to fulfill their student teacher requirements this upcoming school year (school year 2023-24).

98. And other Arizona Christian students intended to apply for student teaching and practicum placements within the School District; the student teacher and practicum placement process is ongoing as of the date of this filing.

99. Those students and other Arizona Christian students who intended to apply to student teach or fulfill practicum requirements at schools in the School District this upcoming school year will now not be able to do so.

100. These students are now forced to look elsewhere to fulfill their student teacher and practicum requirements simply because of Arizona Christian's (and their) religious status and beliefs.

101.   The School District's actions and practice, policy, or procedure has caused Arizona Christian reputational harm by conveying to prospective and current university students that obtaining an education degree from Arizona Christian can and will diminish their job prospects.

102.   The School District's actions and practice, policy, or procedure has also put Arizona Christian and its students to the following impossible and unconstitutional choice: (a) adhere to their religious beliefs, message, and calling and forfeit participating in the School District's student teacher program on equal terms with others; or (b) abandon their religious beliefs, sacrifice Arizona Christian's religious mission, and be able to participate in the School District's student teacher program.

103.   The School District's actions and unconstitutional practice, policy, or procedure to not cooperate with Arizona Christian and its students because of their religious status, beliefs, and messages is ongoing, is prospective, and therefore requires Arizona Christian and its students to make this choice every day.

104.   That Hobson's choice forces them to choose between their fundamental rights and participation in a public program, which has caused, is currently causing, and will continue to cause irreparable harm.

105.   The daily deprivation of their constitutional rights "unquestionably" causes them "irreparable injury." *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th 707, 731 (9th Cir. 2022) (cleaned up).

106.   Arizona Christian and its students have no adequate remedy at law for the ongoing constitutional violation and will continue to suffer irreparable harm.

107.   So Arizona Christian and its students need declaratory and injunctive relief to protect their ability to exercise their constitutional rights while participating in a public program just like everyone else.

108.   An injunction protecting the constitutional rights of Arizona Christian and its students outweighs any harm to the School District and benefits the public interest.

109.   The requested declaratory and injunctive relief is warranted in addition to damages for the past and ongoing constitutional violation.

## LEGAL ALLEGATIONS

### FIRST CLAIM FOR RELIEF

### VIOLATION OF THE FREE EXERCISE CLAUSE: RELIGIOUS HOSTILITY

110.   Arizona Christian incorporates by reference paragraphs 1–109.

111.   Arizona Christian is a religious organization under the First Amendment.

112.   Arizona Christian holds sincere religious beliefs that drive and form the foundation for everything it does.

113.   Arizona Christian exercises its religion by educating students from a biblical worldview and by spreading and sharing its religious messages.

114. Arizona Christian and its students do not share religious messages and beliefs within its student teacher programs with local public schools.

115. The Free Exercise Clause prohibits the School District from "impos[ing] regulations that are hostile to the religious beliefs of affected citizens and [from] act[ing] in a manner that passes judgment upon or presupposes the illegitimacy of religious beliefs, and practices." *Masterpiece Cakeshop*, 138 S. Ct. at 1731.

116. The Free Exercise Clause prohibits the School District from acting hostile to or from targeting religion, religious status, beliefs or a religious viewpoint.

117. During the Board meeting on February 23, 2023, Defendants criticized the religious beliefs of Arizona Christian and its students, explaining they were incompatible with the School District's positions and views on sexuality and marriage.

118. After citing to and reading Arizona Christian's religious beliefs directly from Arizona Christian's website, Defendants stated that Arizona Christian student teachers could not properly care "for every child, every day, [at] every opportunity," Feb. 23rd Meeting Video at 1:09:59–1:11:04, simply because Arizona Christian and its students are "above all else [ ] committed to Jesus Christ accomplishing His will in advancing His kingdom on Earth as in heaven," *Id.* at 1:09:59–1:11:04.

119. After directly quoting part of Arizona Christian's "Core Commitments"—namely Arizona Christian's beliefs on family, sexual

23

morality, and marriage—Defendant Valenzuela queried "how bringing people from [Arizona Christian] that [have those beliefs] ingrained in their values will vary [the] impact [of] three of [its] board members who are part of the LGBTQ community" and how those beliefs will "hold space" for people of other faiths, members of the LGBT community, and those who have different beliefs. *Id.* at 1:11:59–1:12:45.

120.   Defendant Valenzuela then stated that she, and "other queer kids," "could not be safe in this school district" due to Arizona Christian and its students' religious beliefs. *Id.* at 1:12:46–1:13:34.

121.   Defendant Clayton echoed these "concerns." He stated that he "looked into not only [Arizona Christian's] core values but [also] the statement of faith," and those beliefs "gave him pause" because he "just [does not] believe that [those beliefs] belong[] in schools." *Id.* at 1:13:57–1:15:05.

122.   Defendant Gomez-Whaley was "embarrassed" that she allowed the School District's relationship with Arizona Christian to continue on her watch and she emphasized that the School District "cannot continue to align ourselves with organizations that starkly contrast our values." *Id.* at 1:26:15–1:26:26.

123.   Arizona Christian student teachers have not proselytized or advanced their religious beliefs on School District students and have abided by all School District Policies.

124.   Yet the Board unanimously voted to cease its relationship with Arizona Christian and its students because of their religious status and beliefs.

125.   Teachers who graduated from or are otherwise affiliated with Arizona Christian have not proselytized or advanced their religious beliefs on School District students and have abided by all School District Policies.

126.   The School District's comments about the religious beliefs of Arizona Christian and its students at the February 23 meeting and the School District's termination of its relationship with Arizona Christian and its students due to their religious status and beliefs, demonstrate impermissible religious hostility.

127.   The School District's religious hostility is per se unconstitutional. *See Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2422 n.1 (2022) ("A plaintiff may also prove a free exercise violation by showing that official expressions of hostility to religion accompany laws or policies burdening religious exercise; in cases like that we have set aside such policies without further inquiry." (cleaned up)).

### SECOND CLAIM FOR RELIEF

### VIOLATION OF THE FREE EXERCISE CLAUSE: RELIGIOUS STATUS-BASED DISCRIMINATION

128.   Arizona Christian incorporates by reference paragraphs 1–109.

129.   "The Free Exercise Clause protects religious observers against unequal treatment and subjects to the strictest scrutiny [government actions] that target the religious for special disabilities based on their religious status," *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 (2017) (cleaned up), and "on the basis of their religious exercise," *Carson v. Makin*, 142 S. Ct. at 2002.

130.   The Free Exercise Clause prohibits the School District from discriminating against otherwise eligible participants in its student teacher programs by disqualifying them solely because of their religious character, beliefs and exercise.

131.   The Board terminated its student teacher agreement with Arizona Christian solely because of Arizona Christian's religious status, beliefs and exercise.

132.   Requiring Arizona Christian and its students to choose between participating in the School District's student teacher program or forfeiting their religious status, beliefs, and practices is a violation of the Free Exercise Clause.

133.   The School District's actions do not serve a compelling governmental interest and are not narrowly tailored to achieve any purported compelling interest, and therefore violate the Free Exercise Clause of the United States Constitution.

### THIRD CLAIM FOR RELIEF

### VIOLATION OF THE FREE EXERCISE CLAUSE: NOT NEUTRAL OR GENERALLY APPLICABLE / RELIGIOUS DISCRIMINATION

134.   Arizona Christian incorporates by reference paragraphs 1–109.

135.   Arizona Christian holds sincere religious beliefs that drive and form the foundation for everything it does.

136.   Arizona Christian exercises its religion by educating students from a biblical worldview and by spreading and sharing its religious messages.

137.   The Free Exercise Clause demands that the Board act neutral towards Arizona Christian and its students' religious status and beliefs. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993) ("[T]he protections of the Free Exercise Clause pertain if the [government action] at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons.").

138.   The Free Exercise Clause "forbids subtle departures from neutrality" as well as "overt" hostility. *Id.* at 534.

139.   "[A] law targeting religious beliefs as such is never permissible." *Trinity Lutheran*, 137 S. Ct. at 2024 n.4 (quoting *Lukumi*, 508 U.S. at 533).

140.   The School District's comments about Arizona Christian and its students' religious status and beliefs at the February 23 meeting and its termination of the agreement precisely *because of their religious status and beliefs* violate the Free Exercise Clause's requirement of religious neutrality.

141.   The School District's actions as described above substantially burden Arizona Christian and its students' religious exercise.

142.   The School District's actions are not neutral or generally applicable and therefore trigger strict scrutiny.

143.   The School District's authority to revoke prior agreements on a case-by-case basis also constitutes a mechanism for individualized assessments, thus triggering strict scrutiny. *See Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021).

27

144.   The School District's decisions are based on selecting particular religious beliefs and terminating relationships in the program based on disagreement with those beliefs.

145.   The School District is only terminating its relationship with religious schools that hold specific religious beliefs, not all schools that are religious. Feb. 23rd Meeting Video at 1:25:14-1:25:57.

146.   The School District's actions do not serve a compelling governmental interest and are not narrowly tailored to achieve any purported compelling interest, and therefore violate the Free Exercise Clause of the United States Constitution.

### FOURTH CLAIM FOR RELIEF

### VIOLATION OF THE EQUAL PROTECTION CLAUSE: RELIGIOUS DISCRIMINATION

147.   Arizona Christian incorporates by reference paragraphs 1–109.

148.   The Equal Protection Clause prohibits discrimination on the basis of religion.

149.   The Equal Protection Clause prevents the School District from excluding Arizona Christian and its students from participating in the School District's student teacher program because of their religious status and beliefs.

150.   The School District treated Arizona Christian and its students less favorably than similarly situated college and universities (and students) because of their religious status, beliefs, and expressions, thus discriminating against them in violation of the Equal Protection Clause.

151.   The School District's actions must satisfy strict scrutiny because its disparate treatment is based on fundamental rights: religious exercise, association, and speech.

152.   The School District's actions do not serve a compelling governmental interest and are not narrowly tailored to achieve any purported compelling interest, and therefore violate the Fourteenth Amendment's Equal Protection Clause.

153.   The School District's actions are not even rationally related to a legitimate governmental interest and therefore violate the Fourteenth Amendment's Equal Protection Clause.

**FIFTH CLAIM FOR RELIEF**

**VIOLATION OF THE FIRST AMENDMENT: FREE SPEECH AND EXPRESSIVE ASSOCIATION**

154.   Arizona Christian incorporates by reference paragraphs 1–109.

155.   The First Amendment protects the right of persons to speak and associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.

156.   The First Amendment bars the government from prohibiting persons from expressively associating with others in the process of creating and disseminating speech.

157.   The First Amendment protects the right of Arizona Christian and its students to speak, to freely associate, to be free not to speak, and to not associate.

158.   The School District's comments and actions as described above force Arizona Christian and its students to engage in speech and expression

that  they do not wish to convey—and prohibits their religious speech and expression—in order to participate equally in the School District's student teacher program.

159.   The School District thus effectively forces Arizona Christian and its students to alter their internal association and messages in order to participate equally in the School District's student teacher program.

160.   The School District's comments and actions as described above are content-based and viewpoint-based discrimination on speech and association and violate the First Amendment to the United States Constitution.

## SIXTH CLAIM FOR RELIEF

### VIOLATION OF THE FIRST AMENDMENT: RETALIATION FOR PROTECTED SPEECH AND RELIGIOUS EXERCISE

161.   Arizona Christian incorporates by reference paragraphs 1–109.

162.   The First Amendment prohibits the government from retaliating against individuals or organizations for exercising their fundamental rights, including the rights to religious exercise, free speech, and association.

163.   The First Amendment's Free Speech Clause protects Arizona Christian and its students' ability to speak, to create, to publish, and to distribute speech about their religious beliefs.

164.   The Free Speech Clause prohibits the School District from silencing speech and from taking adverse action against those who express a message it disfavors.

165.   The School District unconstitutionally retaliated against Arizona Christian and its students by terminating the agreement with Arizona

Christian because of Arizona Christian's religious statements posted *only* on Arizona Christian's own website and because of Arizona Christian's religious exercise in educating students from a biblical worldview.

166. The School District did not terminate its agreement with Arizona Christian because of any expression or speech made by Arizona Christian student teachers while performing their duties at the School District.

167. The School District's actions were thus content-based and viewpoint-based discrimination.

168. Arizona Christian's religious statements and expression is speech on a matter of public concern.

169. Arizona Christian's religious statements and expression were made as a private organization and not as an employee of the School District.

170. The School District retaliated against Arizona Christian and its students and took adverse action against them by terminating the ongoing student teacher agreement.

171. Arizona Christian's religious statements and expression were a substantial or motivating factor for the adverse action.

172. The School District acted with retaliatory motive.

173. The School District did not have any legitimate administrative interests that would justify the retaliation.

174. The School District would not have taken the same adverse action in the absence of Arizona Christian's religious statements and expression.

175. The School District intended to retaliate against, obstruct, or chill the First Amendment rights of Arizona Christian and its students.

176. The School District's retaliation against Arizona Christian and its students because of their religious exercise and speech violates the First Amendment to the United States Constitution.

**SEVENTH CLAIM FOR RELIEF**

**VIOLATION OF THE ESTABLISHMENT CLAUSE: RELIGIOUS FAVORITISM AND EXCESSIVE ENTANGLEMENT**

177. Arizona Christian incorporates by reference paragraphs 1–109.

178. "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982).

179. The Establishment Clause thus prohibits the School District from preferring and favoring certain religious beliefs over others.

180. The School District made an explicit preference for religious beliefs and made clear that it was Arizona Christian and its students' "strong" Christian beliefs about marriage and sexuality that prompted the School District's termination of the student teacher agreement.

181. The School District established a preference for "Christian denominations who are LGBTQ friendly":

> Um we had this conversation [when] ***we talked about a different University*** um and there's definitely concerns there for me[;] this is not a concern about Christianity[;] ***there are plenty of Christian denominations who are LGBTQ friendly so I want to make it clear that for me my pause is not that they're Christian so much as this particular institution's strong anti-LGBTQ stance*** and their strong belief that you believe this to your core and you take it out into

32

the world and I simply don't know how a piece of paper can change somebody's underlying value system[;] um ***even though they may not do anything illegal*** where they are preaching or using Bible verses

Feb. 23rd Meeting Video at 1:25:14-1:25:57 (emphasis added).

182.    The School District's favoritism to religions with different beliefs than Arizona Christian and its students' religious beliefs violated the Establishment Clause of the United States Constitution.

### EIGHTH CLAIM FOR RELIEF

### VIOLATION OF THE ARIZONA FERA: BURDEN ON RELIGIOUS EXERCISE

183.    Arizona Christian incorporates by reference paragraphs 1–109.

184.    This Court has supplemental jurisdiction under 28 U.S.C. § 1367 to adjudicate this claim.

185.    Arizona's FERA was enacted "to protect Arizona citizens' right to exercise their religious beliefs free from undue governmental interference." *Brush & Nib Studio, LC v. City of Phoenix*, 247 Ariz. 269, 297 (2019); *see also* Ariz. Rev. Stat. Ann. §§ 41-1493–41-1493.04.

186.    FERA provides that "government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." Ariz. Rev. Stat. Ann. § 41-1493.01(B).

187.    Arizona Christian and its students hold sincere religious beliefs about marriage and sexuality.

188.    The School District's comments about their religious beliefs at the February 23 meeting and the School District's termination of the student teacher agreement because of the religious beliefs of Arizona Christian and its students substantially burdens their religious exercise by forcing them "to

1    choose between following the precepts of [their] religion and receiving a

2    government benefit." *Brush & Nib*, 247 Ariz. at 298 (cleaned up).

3        189.   The School District's actions do not serve a compelling

4    governmental interest and are not the least restrictive means of furthering

5    any purported compelling interest, and therefore violate Arizona's FERA.

6        190.   Arizona Christian and its students are entitled to "appropriate

7    relief against" the School District for its FERA violation. Ariz. Rev. Stat. Ann.

8    § 41-1493.01(D).

9                          **PRAYER FOR RELIEF**

10   WHEREFORE, Arizona Christian University requests that this Court enter

11   judgment against Defendants, and order the following relief:

12     A. Declare that the School District's actions in terminating its agreement

13        with Arizona Christian because of the religious status and beliefs of

14        Arizona Christian and its students violated and continue to violate

15        their constitutional rights to:

16            a.  free exercise of religion;

17            b.  equal protection;

18            c.  free speech and expressive association;

19            d.  be free from unconstitutional retaliation;

20            e.  be free from religious favoritism and entanglement;

21        and their rights under the Arizona FERA to:

22            f.  free exercise of religion.

23     B. Enter a preliminary and permanent injunction:

24

25

                                    34

    a. Ordering Defendants to reinstate and approve the Agreement with Arizona Christian for school year 2023-24;

    b. Prohibiting Defendants from discriminating against Arizona Christian and its students because of their religious status, exercise, and expression;

    c. Prohibiting Defendants from terminating, rescinding, or refusing to enter into any future agreements with Arizona Christian for the placement of student teachers and practicum students because of the religious status, exercise, or expression of Arizona Christian or its students; and

    d. Prohibiting Defendants from terminating, rescinding, or refusing to enter into any future agreements with Arizona Christian for the placement of student teachers and practicum students based on pretext not related to the religious status, exercise, and expression of Arizona Christian or its students.

C. Compensatory damages for the past and ongoing constitutional violation.

D. Nominal damages for the past and ongoing constitutional violation and for the School District's violation of Arizona's FERA.

E. Punitive damages against Defendants Gomez-Whaley, Abbott-Bayardi, Clayton, Peterson, and Valenzuela (in their individual capacities only) for the past and ongoing constitutional violation.

F. Costs and attorney's fees.

G. Grant any other relief this Court deems equitable, just, and proper.

1    H. Retain jurisdiction of this matter as necessary for enforcing this Court's

2        orders.

3    Respectfully submitted this 9th day of March, 2023.

4

| | |
|---|---|
| | <u>s/Jeremiah J. Galus</u> |
| Jacob E. Reed** | Jeremiah J. Galus |
| VA Bar No. 97181 | AZ Bar No. 030469 |
| ALLIANCE DEFENDING FREEDOM | Ryan J. Tucker* |
| 44180 Riverside Parkway | AZ Bar No. 034382 |
| Lansdowne, VA 20176 | ALLIANCE DEFENDING FREEDOM |
| (571) 707-4655 | 15100 N. 90th Street |
| jreed@adflegal.org | Scottsdale, AZ 85260 |
| | (480) 444-0020 |
| David A. Cortman*** | jgalus@adflegal.org |
| GA Bar No. 188810 | rtucker@adflegal.org |
| ALLIANCE DEFENDING FREEDOM | |
| 1000 Hurricane Shoals Road NE | *Attorneys for Plaintiff* |
| Suite D-1100 | |
| Lawrenceville, GA 30043 | *Application for admission pending |
| (770) 339-0774 | ***Pro hac vice* application pending |
| dcortman@adflegal.org | ****Admitted pro hac vice* |

1

## VERIFICATION OF COMPLAINT

2      I, Dr. Jeffrey Green, a citizen of the United States and a resident of the

3   State of Arizona, hereby declare under penalty of perjury that I have read the

4   foregoing Verified Complaint and the factual allegations contained therein,

5   and the facts as alleged are true and correct.

6

7      Executed this 7th day of March, 2023, in _Avondale_, Arizona.

8

9

10                              Dr. Jeffrey Green, V.P. of Academic Affairs
                                Arizona Christian University

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

37