1
2
3
4
5
6
7
8
9

Jeremiah J. Galus
AZ Bar No. 030469
Ryan J. Tucker
AZ Bar No. 034382
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jgalus@adflegal.org
rtucker@adflegal.org

**Additional counsel on signature block*

*Attorneys for Plaintiff*

10
11

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

12
13
14
15
16
17
18
19
20
21
22
23
24
25

Arizona Christian University, on behalf of itself and its students,

Plaintiff,

v.

Washington Elementary School District No. 6; and Nikkie Gomez-Whaley; Jenni Abbott-Bayardi; Kyle Clayton; Lindsey Peterson; and Tamillia Valenzuela, all in their official and individual capacities,

Defendants.

Case No. CV-23-413-PHX-SPL

**MOTION FOR PRELIMINARY INJUNCTION and MEMORANDUM IN SUPPORT**

**Expedited Oral Argument Requested**

# TABLE OF CONTENTS

Table of Contents ...................................................................... i

Table of Authorities ................................................................ iii

Memorandum in Support .........................................................1

Introduction..............................................................................1

Statement of Facts....................................................................2

        A.    Arizona Christian and its Religious Beliefs. ......................2

        B.    Arizona Christian's Elementary Education Degree
             Programs. ...........................................................................3

        C.    The School District's Positive, Eleven-Year Relationship
             with Arizona Christian.......................................................4

        D.    The School District Cuts Ties with Arizona Christian
             because of Arizona Christian's Religious Status and
             Beliefs. ...............................................................................5

        E.    The School District's Decision is Irreparably Harming
             Arizona Christian and its Students. ...................................8

Legal Standard.........................................................................9

Argument..................................................................................9

    I.    The School District's actions violate the Free Exercise Clause. ...9

        A.    The School District was hostile to Arizona Christian's and
             its students' religious beliefs. ..............................................9

        B.    The School District discriminated based on religious
             status. ...............................................................................12

        C.    The School District's actions were neither neutral nor
             generally applicable..........................................................12

        D.    The School District's actions fail strict scrutiny. ..............13

II.    The School District retaliated against Arizona Christian and its students for exercising their constitutional rights. ......................14

III.   The School District also violated Arizona Christian's and its students' other constitutional rights and Arizona's FERA. ........15

IV.    Arizona Christian satisfies the other preliminary injunction factors. ...........................................................................................16

Conclusion ...........................................................................................................17

Certificate of Service...........................................................................................19

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Al Saud v. Days,*
   50 F.4th 705 (9th Cir. 2022) ...................................................................15

4

5

*American Beverage Association v. City & County of San Francisco,*
   916 F.3d 749 (9th Cir. 2019) ..............................................................9, 17

6

*Brush & Nib Studio, LC v. City of Phoenix,*
   247 Ariz. 269 (2019) ..............................................................................16

7

*Carson v. Makin,*
   142 S. Ct. 1987 (2022) ............................................................................12

8

9

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,*
   508 U.S. 520 (1993) ..........................................................................11, 13

10

*Freeman v. City of Santa Ana,*
   68 F.3d 1180 (9th Cir. 1995) ..................................................................15

11

12

*Fulton v. City of Philadelphia,*
   141 S. Ct. 1868 (2021) ................................................................12, 13, 14

13

*Kennedy v. Bremerton School District,*
   142 S. Ct. 2407 (2022) ........................................................................9, 13

14

15

*Koala v. Khosla,*
   931 F.3d 887 (9th Cir. 2019) ..................................................................15

16

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights  Commission,*
   138 S. Ct. 1719 (2018) ..............................................................9, 10, 11

17

18

*Obergefell v. Hodges,*
   576 U.S. 644, (2015) ...............................................................................10

19

*Plyler v. Doe,*
   457 U.S. 202 (1982) ................................................................................15

20

*Riley's American Heritage Farms v. Elsasser,*
   32 F.4th 707 (9th Cir. 2022) ........................................................15, 16, 17

21

22

*Roberts v. United States  Jaycees,*
   468 U.S. 609 (1984) ................................................................................16

23

*Trinity Lutheran Church of Columbia,Inc. v. Comer,*
   137 S. Ct. 2012 (2017) ........................................................................2, 12

24

*Turner Broad. System, Inc. v. Federal Communications Commission,*
   512 U.S. 622 (1994) ................................................................................14

25

**Statutes**

Ariz. Rev. Stat. Ann. § 41-1493.04 .................................................................16

Ariz. Rev. Stat. Ann. § 41-1493 ......................................................................16

**Rules**

Fed. R. Civ. P. 65 ..............................................................................................1

Plaintiff Arizona Christian University moves this Court, pursuant to Fed. R. Civ. P. 65, to issue a preliminary injunction ordering the following relief, during the pendency of this action:

A. Ordering Defendants to continue its Agreement with Arizona Christian for school year 2023-24;

B. Prohibiting Defendants from discriminating against Arizona Christian and its students because of their religious status, beliefs, exercise, and expression; and

C. Prohibiting Defendants from terminating, rescinding, or refusing to enter into any future agreements with Arizona Christian and its students for the placement of student teachers and practicum students because of their religious status, beliefs, exercise, or expression.

This Motion is supported by the included Memorandum in Support, Arizona Christian's Verified Complaint (ECF No. 1) and its exhibits, and the Declarations of Linnea Lyding, Geovanna Aponte, and Kayla Langdon, attached as **Exhibits 1**, **2**, and **3**, respectively. Arizona Christian requests an expedited hearing on the motion, given the ongoing irreparable harm.

## MEMORANDUM IN SUPPORT

### INTRODUCTION

For the last eleven years, the Washington Elementary School District partnered with Arizona Christian University for student teacher and practicum placements. Four weeks ago, the School District discriminated against Arizona Christian and its students by voting unanimously to exclude them from such placements because of their religious character, status, and

beliefs. What's more, the School District's Board openly disparaged their religious beliefs during that meeting, suggesting that Arizona Christian students could not respect LGBTQ students and Board members while "be[ing] committed to Jesus Christ" and implying that the mere presence of Arizona Christian students would make people feel "unsafe."

When later questioned about this religious discrimination, a Board member argued that she would not let elementary students "be subjected to" Arizona Christian's "openly bigoted" student teachers, even though not a single complaint had been made against any of them. The School District's policy therefore is loud and clear: Christians with disfavored beliefs are neither welcome nor allowed to serve in the District.

But this religious hostility and discrimination is "odious to our Constitution" and "cannot stand." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2024 (2017). Because the process for placing the student teachers for the fall is occurring now, preliminary injunctive relief is needed to halt the irreparable harm and to allow Arizona Christian and its students to continue their plans for the 2023-24 school year without being penalized for their religious status and beliefs.

## STATEMENT OF FACTS

### A. Arizona Christian and its Religious Beliefs.

Arizona Christian University ("Arizona Christian") holds sincere religious beliefs that form the foundation for everything it does. Lyding Decl. ₧ 11. Since its founding, Arizona Christian has operated in accordance with Christian beliefs rooted in the Holy Bible. *Id.* ₧ 12. Arizona Christian teaches its students to love and serve God above all else and to treat every person

with respect, compassion, and the love of Christ, regardless of others' beliefs, identity, or status. *Id.* ¶ 14. Arizona Christian's mission is thus to "provide[] a biblically-integrated, liberal arts education equipping graduates to serve the Lord Jesus Christ in all aspects of life, as leaders of influence and excellence." *Id.* ¶ 16.

 Arizona Christian also sincerely believes in biblical teachings on marriage and sexuality. Arizona Christian believes that God created man and woman in His image and likeness, that God wonderfully and immutably creates each person as male or female, and that God intends sexual intimacy to occur only between a man and woman who are married to each other. *Id.* ¶ 20.

**B. Arizona Christian's Elementary Education Degree Programs.**

Arizona Christian offers Elementary Education degree programs to its students. *Id.* ¶ 21. To graduate in those programs, students must shadow teachers (the "practicum" requirement) and student teach. *Id.* ¶¶ 22–25. Arizona Christian places students at schools in the Phoenix area for practicum and student teaching placements. *Id.*

Because Arizona Christian believes it must respect the wishes and policies of all local school districts in which Arizona Christian places students, and it must treat others with respect and kindness, Arizona Christian instructs its student teachers to "[a]bide by the rules and policies of the assigned school," "[m]aintain a professional attitude with students, families, staff, and administration," and "[b]e friendly, cooperative, positive, and non-argumentative with all school personnel, parents and students." ECF No. 1-2 (ACU Student Teaching Handbook) at 7.

**C. The School District's Positive, Eleven-Year Relationship with Arizona Christian.**

For the last eleven years, Arizona Christian had partnered with the Washington Elementary School District (the "School District") to place Arizona Christian students at schools in the School District for practicum and student teaching. Lyding Decl. ¶¶ 30–31. On February 23, 2018, Arizona Christian and the School District entered into the most recent version of its partnership: the "Student Teacher Placement Agreement" (the "Agreement"), ECF No. 1-3. *Id.* ¶ 32. The Agreement had a term of one year and could be "renewed on a year-to-year basis." *Id.* ¶ 35. Before February 2023, Arizona Christian and the School District renewed the contract every year. *Id.* ¶¶ 36–38.

Over the past eleven years, dozens of Arizona Christian students have completed practicum and student teaching requirements in the School District. *Id.* ¶ 41. Around twenty-five of those students have served as student teachers and at least seventeen have been hired as teachers by the School District. *Id.* ¶¶ 42–43.

Arizona Christian students understand that they must adhere to the School District's policies when student-teaching or fulfilling practicum requirements in the School District's schools. *See* ECF No. 1-2 at 7. Consistent with Arizona Christian's policy, the Agreement provided that "[e]ach student teacher is expected to . . . comply with all written policies and regulations of the [school at which the student teacher is placed]." ECF No. 1-3 § 2.4. Arizona Christian students who are placed at schools in the School District thus know they must adhere to the School District's policies that (1)

4

1    teachers cannot "use sectarian or denominational books or teach any

2    sectarian doctrines or conduct religious exercises" and (2) teachers cannot

3    impair "[t]he right of a student to participate fully in classroom instruction . .

4    . because of . . . religion, sex, sexual orientation, [or] gender identity." ECF

5    No. 1-5 (WESD Governing Board Policy Manual) at 4–5; Lyding Decl. ¶¶ 33,

6    46, 47–49.

7         Over the last eleven years, the School District has never cited any

8    Arizona Christian student for wrongdoing or for improperly teaching

9    religious beliefs to School District students. Lyding Decl. ¶¶ 44–45; *see also*

10   WESD Feb. 23, 2023 Student Recognition & Regular Meeting, YouTube (Feb.

11   23, 2023), https://www.youtube.com/watch?v=oUaLqZblEFo ("Feb. 23

12   Meeting") at 1:18:09–1:20:09 (Board counsel explaining Arizona Christian

13   and its students are "fully aware" of District policies and citing no past

14   violations.

15   **D. The School District Cuts Ties with Arizona Christian because of**
     **Arizona Christian's Religious Status and Beliefs.**

16

17         At the February 23 Board meeting, the School District's Board decided

     not to renew its Agreement with Arizona Christian because the Board

18
     disagreed with Arizona Christian's religious beliefs. *Id.* ¶ 66. The Board

19
     decided so despite it being "recommended that the Governing Board *approve*

20
     the renewal Agreement for Student Teacher Placement with Arizona

21
     Christian University." Lyding Decl., Ex. 1 (Feb. 23 2023 Board Agenda) at 1

22
     (emphasis added). The recommendation to the Board also made clear that the

23
     "agreement continues to be beneficial to WESD because it increases our

24
     ability to recruit new teachers." *Id.*

25

When discussing why the Board should not renew the Agreement, the Board members criticized Arizona Christian's religious beliefs, speech, and exercise. Defendant Tamillia Valenzuela, who is a member of the Board, opened by stating that she had "concerns" about Arizona Christian's religious beliefs. Feb. 23 Meeting at 1:08:32–1:09:11. Defendant Valenzuela questioned whether Arizona Christian's beliefs—namely, its "commit[ment] to Jesus Christ" and its beliefs about marriage and sexuality—would harm the School District's elementary students. *Id.* at 1:09:59–1:11:04.

Defendant Valenzuela further implied that Arizona Christian student teachers could not treat others with respect, even though there had been no complaints made against them. She asked "how bringing people from an institution that is ingrained in their values . . . will . . . impact three . . . board members who are a part of the LGBTQ community." *Id.* at 1:11:04–1:11:59. She also stated: "[I]f we're bringing people in whose mission [is to] 'above all else . . . influence people to be biblically minded,' how does that hold space for people of other faiths[,] our members of the LGBT community[, or] people who think differently and do not have the same beliefs?" *Id.* at 1:11:59–1:12:45. Defendant Valenzuela then explained that Arizona Christian's religious beliefs would make people feel unsafe, claiming that the mere presence of an Arizona Christian student "makes me feel like I could not be safe . . . in this school district" and "makes other queer kids . . . [feel] that they could not be safe in this community." *Id.* at 1:12:46–1:13:34.

Another Board member, Defendant Kyle Clayton, echoed Defendant Valenzuela's "concerns" and stated that he "would never want . . . [his] son to

1  talk about his two dads and be shamed by a[n Arizona Christian student]
2  teacher who believed a certain way." *Id.* at 1:13:57–1:15:05.

3      And at the end of the discussion, Defendant Nikkie Gomez-Whaley,
4  explained that the Board approved of "Christian denominations who are
5  LGBTQ friendly" but what gave her "pause" was "this particular institution's
6  strong anti-LGBTQ stance and their strong belief that you believe this to
7  your core and you take it out into the world" even though they have not done
8  "anything illegal." *Id.* at 1:25:14–1:25:59. In fact, she declared that she was
9  "embarrassed" that she allowed the School District's relationship with
10  Arizona Christian to continue on her watch. *Id.* at 1:26:15–1:26:45.

11      The School Board members then unanimously voted "no" on renewing
12  the School District's Agreement with Arizona Christian, thus terminating the
13  eleven-year partnership solely because of Arizona Christian's religious
14  beliefs. *Id.* at 1:27:45–1:28:38; *see also* Lyding Decl. ¶¶ 63–66.

15      Two weeks later, at another Board meeting and after this lawsuit had
16  been filed and served, Defendant Valenzuela opened by stating that she
17  "stand[s] strong in everything [she] said." *Governing Board Meeting- Mar. 9,*
18  *2023* at 1:22:20–1:22:27, YouTube (Mar. 9, 2023),
19  https://www.youtube.com/watch?v=OUxyt_PgpGQ ("Mar. 9 Meeting"). And
20  she further disparaged Arizona Christian, claiming that its beliefs "are
21  openly bigoted" and asserting that she "would not sit here as a member of the
22  community and let our children be subjected to that." *Id.* at 1:23:07–1:23:20.
23
24
25

**E. The School District's Decision is Irreparably Harming Arizona Christian and its Students.**

The School District's action against Arizona Christian and its students because of their religious status, beliefs, and speech is causing irreparable harm. To graduate, Arizona Christian Elementary Education students must complete practicum and student teaching hours "in metropolitan Phoenix." Lyding Decl. ⁋ 25. And to obtain a certificate to teach in Arizona, graduates with no full-time teaching experience must complete student teaching. *Id.* ⁋ 22–23. The School District is located in metropolitan Phoenix very close to the Arizona Christian campus and is the largest elementary school district in Arizona. *Id.* ⁋⁋ 5–7. But because of its religious beliefs, Arizona Christian will no longer have the option to place students in the School District's 32 schools.

Arizona Christian's student teacher and practicum placement process is ongoing as of the date of this filing. *Id.* ⁋ 74. Arizona Christian is currently working with its students for arrangements for the upcoming 2023-24 school year. And Arizona Christian students who fulfilled practicum requirements at schools within the School District this year had planned to return to those schools to fulfill their student teacher requirements for the upcoming school year. Yet those students are now forced to look elsewhere because of the School District's decision to cut ties with Arizona Christian. Aponte Decl. ⁋ 7; Langdon Decl. ⁋ 9.

Simply put, the School District's decision has put Arizona Christian and its Elementary Education students to an impossible choice: (a) adhere to their religious beliefs and forfeit participating in the School District's student teacher program; or (b) abandon their beliefs and be eligible to participate in

the School District's student teacher program like everyone else. Arizona Christian and its students are thus harmed each day they face that unconstitutional choice. Injunctive relief is needed to remedy this ongoing harm and to allow Arizona Christian students to seek placements within the School District.

**LEGAL STANDARD**

Arizona Christian must satisfy four factors for a preliminary injunction (1) a likelihood of success on the merits; (2) it will suffer irreparable harm in the absence of a preliminary injunction; (3) its harm outweighs any harm to defendants; and (4) the injunction is in the public interest. *Am. Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 754 (9th Cir. 2019).

**ARGUMENT**

**I.    The School District's actions violate the Free Exercise Clause.**

**A. The School District was hostile to Arizona Christian's and its students' religious beliefs.**

At a minimum, the government cannot act "on hostility to a religion or religious viewpoint" or "in a manner that passes judgment upon or presupposes the illegitimacy of religious beliefs and practices." *Masterpiece Cakeshop, Ltd. v. Colorado C.R. Comm'n*, 138 S. Ct. 1719, 1731 (2018). "[E]ven slight suspicion" that the School District acted with "animosity to religion or distrust of its practices" is enough to infringe the protections guaranteed by the Constitution. *Id.* Governmental hostility to religion is per se unconstitutional. *See Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2422 n. 1 (2022) (hostile government actions that burden religious exercise are "set aside . . . without further inquiry").

1    Arizona Christian and its students' beliefs about marriage and

2   sexuality are "decent and honorable" beliefs based on their understanding of

3   the Holy Bible. *Obergefell v. Hodges,* 576 U.S. 644, 672 (2015). The Board

4   Members' "contemporaneous statements" during the February 23 and March

5   9 meetings are strong evidence of religious hostility. *Masterpiece,* 138 S. Ct.

6   at 1731. At the February 23 meeting, the board members made denigrating

7   statements about Arizona Christian's religious beliefs. Defendant Valenzuela

8   opened by stating she had "concerns" that Arizona Christian believes it must

9   "be committed to Jesus Christ." Feb. 23 Meeting at 1:08:32–1:13:34.

10   Defendant Valenzuela then stated Arizona Christian student teachers could

11   not treat LGBTQ students with dignity and respect because of their beliefs.

12   Worse still, she asserted that the mere presence of Arizona Christian student

13   teachers and practicum students would make her and elementary students

14   feel like they "could not be safe in this school district." *Id.*

15    The other board members reiterated their "concerns" with Arizona

16   Christian's beliefs. Without any evidence, Defendant Clayton implied that his

17   son would be "shamed" by an Arizona Christian student. *Id.* at 1:13:57–

18   1:15:05. Defendant Abbott-Bayardi questioned why Arizona Christian would

19   want to continue partnering with the School District, given the District's

20   "pretty visual resolution about the LGBTQ community." *Id.* at 1:17:38–

21   1:19:41. And Defendant Gomez-Whaley wanted "to make clear" that her issue

22   was not with Christianity generally, but with Arizona Christian's *particular*

23   type of Christianity and she emphasized how "embarrassed" she was that she

24   allowed the partnership to go on for so long. *Id.* at 1:25:15–1:27:36.

25

1      And two weeks later at the March 9 board meeting, Defendant

2  Valenzuela doubled-down, declaring she "st[ood] strong in everything [she]

3  said" and that she would not allow School District students "to be subjected"

4  to Arizona Christian's "openly bigoted" "core values." Mar. 9 Meeting at

5  1:22:20–1:23:20, 3:08:15–3:08:26.

6      "[T]he historical background" and "series of events leading to" the

7  Board's decision further demonstrates the School District's hostility.

8  *Masterpiece,* 138 S. Ct. at 1731. The Board did not cite to any incident of an

9  Arizona Christian student violating any District policy over the last eleven

10  years, nor any problematic incident. In fact, before the Board's unanimous

11  decision, it was *recommended* the Board *approve* its renewal of the

12  Agreement with Arizona Christian. *See* Lyding Decl., Ex. 1 at 1.

13      Just like implying religious beliefs were pretext for discrimination in

14  *Masterpiece*, the School Board's comments and actions at the February 23

15  and March 9 Board meetings "gave every appearance" of hostility to Arizona

16  Christian's religious beliefs. *Masterpiece*, 138 S. Ct. at 1729, 1731.

17  Presupposing Arizona Christian students would disrespect and threaten the

18  safety of elementary students—without evidence that ever occurred, nor

19  complaints having been made—and then calling their religious beliefs

20  "openly bigoted" was neither neutral nor tolerant treatment of religion.

21  "Targeting religious beliefs as such is never permissible." *Church of the*

22  *Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 533 (1993).

23  Accordingly, the School District violated the Free Exercise Clause, per se.

24

25

**B. The School District discriminated based on religious status.**

"The Free Exercise Clause protects religious observers against unequal treatment and subjects to the strictest scrutiny [government actions] that target the religious for special disabilities based on their religious status," *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 (2017) (cleaned up), or "on the basis of their religious exercise," *Carson v. Makin*, 142 S. Ct. 1987, 2002 (2022). The government therefore cannot exclude organizations or individuals from participating in public programs or receiving public benefits because of their religious status or exercise. *Id.*; *Trinity Lutheran*, 137 S. Ct. at 2019–2022.

Yet that is exactly what the School District did here. After quoting verbatim and publicly scrutinizing Arizona Christian's religious beliefs about marriage and sexuality for more than twenty minutes, the School District unanimously excluded Arizona Christian and its students from the District's student teacher and student practicum programs.

Putting Arizona Christian and its students to the choice of being religious or participating in a public program "penalizes the free exercise" of religion, triggering strict scrutiny—which the School District fails. *Trinity Lutheran*, 137 S. Ct. at 2020–2021, 2024 (cleaned up); *see infra* § I.D.

**C. The School District's actions were neither neutral nor generally applicable.**

The School District's decision to cut ties with Arizona Christian burdens Arizona Christian's and its students' religious exercise, is neither neutral nor generally applicable, and thus triggers strict scrutiny. *Fulton v. City of Philadelphia,* 141 S. Ct. 1868, 1876–77 (2021).

12

The "[g]overnment fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Id.* A lack of neutrality can be "masked, as well as overt," so courts must scrutinize the government action for even "subtle departures from neutrality." *Lukumi,* 508 U.S. at 534. Here, the School District's departure from neutrality was anything but subtle. As stated above, the Board members openly stated that *because of Arizona Christian's religious beliefs*, Arizona Christian student teachers would not respect and care for LGBTQ students in their classrooms and would make those students feel unsafe. And the School District's preference for "Christian denominations who are LGBTQ friendly" makes clear it was intolerant of Arizona Christian's *particular religious beliefs*, making its action neither neutral nor generally applicable.[1] Because the School District's actions and unwritten policy and practice are not neutral or generally applicable, it must satisfy strict scrutiny.

**D. The School District's actions fail strict scrutiny.**

Under strict scrutiny, the School District's actions "must advance interests of the highest order and must be narrowly tailored in pursuit of those interests." *Carson*, 142 S. Ct. at 1997 (cleaned up); *accord Fulton*, 141 S. Ct. at 1876–77. "Broadly formulated" interests do not suffice; the School District must assert a compelling reason to deny participation specifically to Arizona Christian and its students. *Fulton,* 141 S. Ct. at 1881. The School District's actions and policy cannot survive strict scrutiny.

---

[1] The District's actions are also not generally applicable because its unfettered discretion to accept and rescind partnerships agreements creates a mechanism for individualized assessments. *Fulton,* 141 S. Ct. at 1877.

13

Put simply, there is no compelling interest in denying a religious organization an opportunity to participate in a public school program simply because it holds specific religious beliefs. Any purported interest in preventing discrimination or disrespect fails because it assumes—with no evidence—that Arizona Christian student teachers and practicum students would actively "discriminate" or disrespect elementary school students because of their religious beliefs. *See Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 664 (1994) (government must "demonstrate that the recited harms are real, not merely conjectural, and that [its actions] will in fact alleviate these harms in a direct and material way"). The School Board never mentioned any past discrimination or harm caused by Arizona Christian students because there isn't any. Indeed, Arizona Christian's beliefs *require* it to treat *everybody* with love, dignity, and respect. "Such speculation is insufficient to satisfy strict scrutiny." *Fulton*, 141 S. Ct. at 1882.

For the same reasons, the School District's actions are not narrowly tailored. Any purported interest in nondiscrimination can be served by less restrictive alternatives—like requiring student teachers to abide by the District's policies, which Arizona Christian student teachers already do.

**II.    The School District retaliated against Arizona Christian and its students for exercising their constitutional rights.**

The School District also retaliated against Arizona Christian for exercising its rights to free speech and exercise. Three factors are necessary to show unconstitutional retaliation: (a) "engag[ing] in constitutionally protected activity"; (2) government action that would chill speech or actual adverse action; and (3) the protected activity must be a substantial

14

1  motivating factor for the government's conduct. *Koala v. Khosla*, 931 F.3d

2  887, 905 (9th Cir. 2019); *Riley's Am. Heritage Farms v. Elsasser*, 32 F.4th

3  707, 721–23 (9th Cir. 2022).

4       The first factor is met because Arizona Christian engaged and

5  continues to engage in its constitutionally protected activities of free speech

6  and religious exercise. The second is met because the School District took

7  "adverse action against" Arizona Christian by "terminating [its] relationship

8  with [Arizona Christian] entirely." *Riley's Farms,* 32 F.4th at 721–23. And

9  the third is met because Arizona Christian "need only show that the

10  government intended to retaliate against, obstruct, or chill [its] First

11  Amendment rights." *Id. A*t 723 (cleaned up). As demonstrated above, Arizona

12  Christian's protected speech and beliefs were *the* motivating factor for the

13  termination decision.

14  **III.  The School District also violated Arizona Christian's and its students' other constitutional rights and Arizona's FERA.**

15       The Equal Protection Clause requires the government to apply laws in

16  a nondiscriminatory manner and to treat different classes of people the same.

17  *See Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995). If the

18  government interferes with a fundamental right or if it discriminates against

19  a suspect class—like religion—strict scrutiny applies. *Al Saud v. Days,* 50

20  F.4th 705, 710 (9th Cir. 2022). Such classifications are "presumptively

21  invidious." *Plyler v. Doe*, 457 U.S. 202, 216–17 (1982).

22       For many of the same reasons as explained above, the School District's

23  actions and policy or practice to exclude universities and student teachers

24

25  with particular religious beliefs violates the Equal Protection Clause. In

addition to violating the fundamental rights to free speech and religious exercise, the School District has impermissibly drawn lines based on religious beliefs. Such unequal treatment can only survive under strict scrutiny.

Similarly, the School District's actions and policy or practice violate Arizona Christian's students' right to expressive association. The First Amendment protects the right of people "to associate with others in pursuit of . . . educational [and] religious . . . ends." *Roberts v. U.S. Jaycees,* 468 U.S. 609, 622 (1984). Arizona Christian students have a right to attend a religious university and to associate with other students and individuals who share their beliefs. But the School District has penalized these students by prohibiting them from student teaching because of *who* they have associated with. Yet the School District cannot "impose penalties or withhold benefits from individuals because of their membership in a disfavored group." *Id.*

Arizona's Free Exercise of Religion Act ("FERA") also prohibits the government from burdening religious exercise unless it "(1) furthers a compelling governmental interest, and (2) is the least restrictive means to further that compelling interest." *Brush & Nib Studio, LC v. City of Phoenix*, 247 Ariz. 269, 301 (2019); *see also* Ariz. Rev. Stat. Ann. §§ 41-1493–41-1493.04. So Arizona's FERA subjects the School District's actions to strict scrutiny from the get-go, which it cannot survive. *See supra* § I.D.

## IV. Arizona Christian satisfies the other preliminary injunction factors.

"[T]he deprivation of constitutional rights unquestionably constitutes irreparable injury," *Riley's Farms,* 32 F.4th at 731 (citation omitted), and tilts "the balance of hardships … sharply in [the plaintiff's] favor," *Am. Beverage*

1  *Ass'n v. City & Cnty. of San Francisco,* 916 F.3d 749, 758 (9th Cir. 2019). And

2  "it is always in the public interest to prevent the violation of a party's

3  constitutional rights." *Am. Beverage*, 916 F.3d at 758.

4      Arizona Christian is facing current, ongoing irreparable harm for at

5  least two reasons. First, "evidence of an ongoing constitutional violation"

6  alone constitutes irreparable harm. *Riley's Farms,* 32 F.4th at 731. Each day,

7  Arizona Christian and its Elementary Education students must decide

8  between their religious character, beliefs, and speech or participating in the

9  School District's student teaching and practicum programs.

10      Second, the unconstitutional policy is causing practical daily harm to

11  Arizona Christian and its students. The School District's decision has shut off

12  Arizona Christian's access to the largest elementary school district in the

13  state—which is located less than one mile away from the University—forcing

14  it to divert student placements elsewhere. And there are Arizona Christian

15  students who have recently completed their practicums within the School

16  District and planned to return next year for student teaching. *See* Aponte

17  Decl. ¶¶ 6–8; Langdon Decl. ¶¶ 6–9. Arizona Christian is currently in the

18  process of making these placements for 2023-24 school year, but now it

19  cannot even seek placements in the School District for these students (and

20  other students), thus continuing to irreparably harm Arizona Christian and

21  its students. *See* Lyding Decl. ¶¶ 71–82.

22                        **CONCLUSION**

23      For the above reasons, the Court should issue a preliminary injunction.

24

25

Respectfully submitted this 23 day of March, 2023.

|  | _s/Jeremiah J. Galus_ |
|---|---|
| Jacob E. Reed** | Jeremiah J. Galus |
| VA Bar No. 97181 | AZ Bar No. 030469 |
| ALLIANCE DEFENDING FREEDOM | Ryan J. Tucker |
| 44180 Riverside Parkway | AZ Bar No. 034382 |
| Lansdowne, VA 20176 | ALLIANCE DEFENDING FREEDOM |
| (571) 707-4655 | 15100 N. 90th Street |
| jreed@adflegal.org | Scottsdale, AZ 85260 |
|  | (480) 444-0020 |
| David A. Cortman** | jgalus@adflegal.org |
| GA Bar No. 188810 | rtucker@adflegal.org |
| ALLIANCE DEFENDING FREEDOM |  |
| 1000 Hurricane Shoals Road NE | _Attorneys for Plaintiff_ |
| Suite D-1100 |  |
| Lawrenceville, GA 30043 |  |
| (770) 339-0774 | ** _Admitted pro hac vice_ |
| dcortman@adflegal.org |  |

1

**CERTIFICATE OF SERVICE**

2         I hereby certify that on March 23, 2023, I electronically filed the

3  foregoing paper with the Clerk of Court using the ECF system which will

4  send notification of such filing to all counsel of record. All other defendants or

5  their counsel shall be served via process server.

6

7                              *s/ Jeremiah J. Galus*
                               Jeremiah J. Galus
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25